UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| T&S AUTO SALES & SERVICE, LLC<br>P.O. Box 396<br>Moorestown, New Jersey 08057 | :<br>:<br>: |
| | : CIVIL ACTION |
| and | : |
| | : |
| THOMAS McMENAMIN<br>803 Balis Court<br>Mullica Hill, New Jersey 08062, | : NO.<br>:<br>: |
| | : |
| Plaintiffs | : |
| | : |
| v. | : |
| | : |
| RJJD ASSOCIATES, LLC<br>101 Greenspring Road<br>Wilmington, Delaware 19807, | :<br>:<br>: |
| | : |
| JAMES SIPALA<br>101 Greenspring Road<br>Wilmington, Delaware 19807, | :<br>:<br>: |
| | : |
| NISSAN NORTH AMERICA, INC.<br>One Nissan Way<br>Franklin, Tennessee 37607 | :<br>:<br>: |
| | : |
| and | : |
| | : |
| JOSEPH BUSH, Jr.<br>200 W. Lincoln Highway<br>Exton, Pennsylvania 19341, | :<br>:<br>: |
| | : |
| Defendants. | : |

**COMPLAINT**
**FOR INJUNCTION AND OTHER RELIEF**

Plaintiffs T&S Auto Sales and Service, LLC and Thomas McMenamin, by and through

their attorneys, Kaplin Stewart Meloff Reiter & Stein, P.C., hereby file this Complaint and seek

an injunction and monetary damages against the Defendants, as follows:

1

## The Parties

1. Plaintiff T&S Auto Sales and Service, LLC (hereinafter "T&S Auto") is a Pennsylvania limited liability company with an address of P.O. Box 396, Moorestown, New Jersey 08057.

2. Plaintiff Thomas McMenamin (hereinafter "McMenamin") is an adult individual and citizen of the State of New Jersey, residing at 803 Balis Court, Mullica Hill, New Jersey 08062.

3. Non-party Steven Kramer is an adult individual and citizen of the State of New Jersey.

4. At all times relevant hereto, Steven Kramer and Plaintiff McMenamin were the sole members of Plaintiff T&S Auto.

5. Defendant RJJD Associates, LLC (hereinafter "RJJD") is a Pennsylvania limited liability company with its principal place of business at 101 Greenspring Road, Wilmington, Delaware 19807. At all material times Defendant RJJD acted through its agent Defendant James Sipala.

6. Defendant James Sipala (hereinafter "Sipala") is an adult individual and citizen of the State of Delaware, residing at 101 Greenspring Road, Wilmington, Delaware 19807. At all material times, Defendant Sipala was the principal and managing member of Defendant RJJD.

7. Defendant Nissan North America, Inc. (hereinafter "Nissan") is a California corporation, with its principal place of business at One Nissan Way, Franklin, Tennessee 37607.

8. Defendant Joseph Bush, Jr. (hereinafter "Bush") is an adult individual and citizen of the Commonwealth of Pennsylvania with a principal place of business at 200 W. Lincoln Highway, Exton, Pennsylvania 19341.

2

## JURISDICTION AND VENUE

9.  This Court has jurisdiction pursuant to 28 U.S.C. §1332(c) based on diversity of citizenship, in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10. Specifically, Plaintiff McMenamin and all of the members of the Plaintiff T&S are citizens of the State of New Jersey; Defendant Sipala and all of the members of Defendant RJJD are citizens of the State of Delaware; Defendant Nissan is a California corporation with its principal place of business in Tennessee; and Defendant Bush is a citizen of the Commonwealth of Pennsylvania.

11. Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district and it is where the motor vehicle dealership at issue in this action is located.

## FACTS

12. Beginning on June 3, 2014, Plaintiffs and Defendants RJJD and Sipala entered into negotiations for Plaintiff T&S Auto to purchase a Nissan motor vehicle dealership located at 459 W. Lancaster Avenue, Devon, Pennsylvania and licensed by the Commonwealth of Pennsylvania under the trade name of Nissan of Devon (hereinafter the "Dealership").

13. At all times relevant hereto, Defendant RJJD owned and operated the Dealership.

14. The Dealership is uniquely attractive for purchase by Plaintiffs inasmuch as it is an underperforming dealership and purchase of the Dealership does not require a simultaneous purchase of the real property on which the Dealership is located.

15.    Between June 11 and June 26, 2014, Defendants RJJD and Sipala provided Plaintiffs
       with documents which Defendants RJJD and Sipala represented to be all relevant
       documents relating to the purchase of the Dealership.

16.    One of the documents provided by Defendants RJJD and Sipala to Plaintiffs was a
       document entitled "Nissan Dealer Sales and Service Agreement Standard Provisions",
       which is attached hereto, incorporated herein and marked as **Exhibit 1** (hereinafter
       "Standard Provisions").

17.    Defendants RJJD and Sipala represented to Plaintiffs that the Standard Provisions
       constituted the full and complete franchise agreement between Defendant RJJD and
       Defendant Nissan with respect to the Dealership.

18.    The Standard Provisions require Defendant Nissan to provide consent to the sale based
       upon the following criteria: "personal, business and financial qualifications, expertise,
       reputation, integrity, experience and ability of the Principal Owner(s) and Executive
       Manager… the capitalization and financial structure of the prospective dealer, the
       prospective purchaser's proposal for conducting the Dealership Operations, and Seller's
       interest in promoting and preserving competition". *See* Exh. 1, §15.

19.    Pursuant to the terms of the Standard Provisions, the sale was contingent upon consent by
       Defendant Nissan, which consent Defendant Nissan agreed would not be unreasonably
       withheld.

20.    Neither the Standard Provisions nor any of the other documents or information provided
       to Plaintiffs indicated that Defendant Nissan had a right of first refusal for the sale of the
       Dealership.

21.  In reliance upon the documents and information provided by Defendants RJJD and Sipala, on July 18, 2014, Plaintiff T&S Auto entered into an Asset Purchase Agreement with Defendant RJJD, which is attached hereto, incorporated herein and marked as **Exhibit 2** (hereinafter "APA").

22.  The APA was subsequently amended on July 28, 2014 and August 12, 2014. Amendment No. 1 and Amendment No. 2 to the APA are attached hereto, incorporated herein and marked as **Exhibit 3**.

23.  Under the APA, Plaintiff T&S Auto agreed to purchase all of the assets, properties and rights of the Dealership in exchange for the sum of $2.4 million.

24.  Defendants RJJD and Sipala attached the Standard Provisions to the APA as Schedule 8(e) and again represented that the Standard Provisions constituted the "Nissan Franchise Sales and Service Agreement". *See* Exh. 2, ¶8(e).

25.  On July 18, 2014, Defendant RJJD submitted the APA to Defendant Nissan and requested that Defendant Nissan consent to the sale of the Dealership to Plaintiff T&S Auto.

26.  Between July 18, 2014 and September 22, 2014, Plaintiffs engaged in numerous communications with Defendant Nissan with respect to the sale of the Dealership.

27.  Defendant Nissan through its agents, including but not limited to Gary Frigo, continually communicated that the sale of the Dealership to Plaintiff T&S Auto would be fast tracked.

28.  Between July 18, 2014 and September 22, 2014, Defendant Nissan, through its agents, including but not limited to Gary Frigo, Vito A. Ruggiero, Dennis O'Dwyer, Dale David

and Kevin Wagstaff made statements and engaged in actions consistent with Nissan's approval of the sale of the Dealership to Plaintiff T&S Auto.  For example:

a.   On July 31, 2014, Gary Frigo emailed Plaintiff McMenamin to ask whether Plaintiffs were interested in purchasing dealerships in addition to the Devon of Nissan Dealership.  Mr. Frigo provided a list of additional dealerships that could be purchased by Plaintiffs.

b.   On August 2, 2014, Gary Frigo emailed Plaintiff McMenamin to advise Plaintiff of the procedure by which Plaintiffs would need to interview current employees and new hires of the Dealership.  Mr. Frigo also stated that he expected that the closing for the sale of the Dealership to Plaintiffs would occur by September 1, 2014.

c.   On August 19, 2014, Defendant Nissan's sister corporation, Nissan Motors Acceptance Corp.,  approved a line of credit for Plaintiff T&S Auto to finance the purchase of automobiles for the Dealership;

d.   Defendant Nissan's agent Vito Ruggiero, provided Plaintiffs with an inventory list of Nissan cars available and to be delivered to Plaintiffs; and

e.   Defendant Nissan directed Plaintiff T&S Auto modify its Operating Agreement to include terms consistent with Defendant Nissan's unwritten internal guidelines.  Plaintiff T&S Auto immediately complied with the demand.

29.   Perhaps most egregious, Defendant Nissan, through its agent Gary Frigo, advised Plaintiff McMenamin that, in order for the sale to go through, Plaintiff McMenamin's then-employer, World Auto Group, would need to be immediately informed of the sale.

30.     On July 18, 2014, Mr. Frigo communicated to Plaintiff McMenamin that if, within the hour, Plaintiff McMenamin did not inform his employer Chris Preziosi at World Auto Group about the APA, Mr. Frigo would directly inform Mr. Preziosi about the APA.

31.     As a result of Defendant Nissan's assurances of their consent to the sale of the Dealership to Plaintiffs, and Defendant Nissan's other representations, Plaintiff McMenamin advised his then-employer of his intended purchase of the Dealership and was immediately terminated from his position as Executive Vice President of World Auto Group, losing his yearly compensation of approximately $1.2 million.

32.     Defendants Nissan, RJJD and Sipala also made numerous statements and took numerous actions evidencing the intent to consent to, and proceed with, the sale of the Dealership to Plaintiff T&S Auto, including but not limited to hiring two of Plaintiff T&S Auto's employees to assist in the transition of the Dealership to Plaintiff T&S Auto.

33.     On September 23, 2014, Plaintiffs received a letter from Defendant Nissan titled "Notice of Right of First Refusal Exercise", a true and correct copy of which is attached hereto, incorporated herein and marked as **Exhibit 4**.

34.     Defendant Nissan contended in its Notice that Defendant Nissan was exercising a right of first refusal and would not grant consent to Plaintiff T&S Auto's purchase of the Dealership.

35.     Defendant Nissan did not provide the reasons for its refusal to consent to Plaintiff's purchase of the Dealership or for its exercise of the purported right of first refusal.

36.     At all times, Plaintiffs met all of Nissan's written criteria and qualifications for the purchase of the Dealership.

37.   At no time before September 23, 2014, did Defendant Nissan, Defendant RJJD or Defendant Sipala disclose that the franchise agreement between Defendants Nissan and RJJD relating to the Dealership consisted not only of the Standard Provisions provided to Plaintiffs, but also consisted of a separate document titled "Nissan Dealer Term Sales & Service Agreement", which is attached hereto, incorporated herein and marked as Exhibit 5 (hereinafter "Dealer Agreement").

38.   Defendant Nissan bases its purported right of first refusal on the terms of the Dealer Agreement which Defendants neither disclosed nor provided to Plaintiffs until after September 23, 2014.

39.   Defendant Nissan's purported exercise of the right of first refusal is a pretext, untimely, unlawful and in bad faith.

40.   Rather, Plaintiffs believe and therefore aver that Defendant Nissan never intended to exercise a good faith review of Plaintiff's T&S Auto's application to purchase the Dealership.

41.   Defendant Nissan always intended, and continues to intend, to sell and assign the Dealership to Defendant Bush.

42.   Plaintiffs now understand that Defendant Nissan executed agreements selling and/or assigning the Dealership to Defendant Bush at the same time that Defendant Nissan represented to Plaintiffs that the Dealership would be sold to Plaintiff T&S Auto.

43.   In fact, Plaintiffs believe that Defendant Nissan's sale of the Dealership to Defendant Bush is imminent and will take place on or before November 1, 2014.

44.   Defendant Nissan's actions are in furtherance of its plan to increase its profitability by creating "clusters" or "geographic triangles" of dealerships owned by a single dealer.

45.     Defendant Nissan's purpose in creating "clusters" or "geographic triangles" of dealerships owned by the same dealer is to control and fix prices of Nissan motor vehicles in a geographical area, thereby increasing profitability for the dealers with rising franchise value.  The result is decreased competition and higher prices for the consumer.

46.     It is believed and therefore averred that when Defendant Nissan receives an asset purchase agreement from a prospective purchaser, it executes its "cluster" plan by circumventing the prospective purchaser and attempting to sell the dealership to another existing dealer in the same geographic area.

47.     It is believed and therefore averred that Defendant Nissan does not review the prospective purchaser's asset purchase agreement or request for consent of sale pursuant to Defendant Nissan's stated guidelines or in good faith in order to promote its "cluster" plan.

48.     It is also believed and therefore averred that Defendant Nissan regularly provides substantial financial remuneration as incentive to dealers whom Defendant Nissan wants to bring into the "clusters", such as Defendant Bush.

**COUNT I**
**SPECIFIC PERFORMANCE AND INJUNCTION**
**(Plaintiffs v. Defendants RJJD, Nissan and Bush)**

49.     Plaintiffs incorporate by reference the above paragraphs 1 through 48 of Plaintiffs' Complaint as though fully set forth herein at length.

50.     Plaintiffs herein seek to enjoin Defendants RJJD, Nissan and Bush from selling, transferring or assigning the Dealership to Defendant Bush or any individual or entity other than Plaintiff T&S Auto.

51.    Absent injunctive relief, Plaintiffs and such damages will be of such scope and permanence that monetary relief will not be adequate as compensation.

52.    The Dealership facilities are unique and monetary damages would be an inadequate remedy to Plaintiff T&S Auto.

53.     Purchase of another Nissan dealership or another motor vehicle manufacturer's dealership is not equivalent to purchase of the Nissan of Devon Dealership, as the facilities, the consumer base and the location are unique and are the specific basis upon which Plaintiffs sought to purchase a Nissan dealership.

54.    Plaintiffs expressly analyzed and entered into an agreement to purchase the Dealership, rather than other Nissan dealerships, based on Nissan of Devon's unique return on investment.

55.    The Dealership is also unique, inasmuch as it is an underperforming dealership, the purchase of which does not require purchase of the real estate upon which the Dealership is located.

56.    Plaintiffs are unable to purchase a substitute Nissan dealership, as all other available dealerships require the output of tens of millions of dollars and require the purchase of both the dealership assets and the real estate.

57.    Defendants' representations, acts and omissions have also caused non-monetary damages to Plaintiff McMenamin's reputation in the automobile industry, which may prevent Plaintiff McMenamin from obtaining other employment unless Defendants are compelled to comply with the APA, which requires the appointment of Plaintiff McMenamin as managing member/dealer principal upon the sale of the Dealership to Plaintiff T&S Auto.

58.   Plaintiffs will be irreparably harmed if the Dealership is sold or assigned to Defendant Bush while Defendant Nissan's wrongful refusal to consent to the sale of the Dealership to Plaintiff is litigated.

59.   Plaintiffs do not have an adequate remedy at law and would not be adequately compensated by monetary damages.

60.   Injunctive relief is authorized by the Board of Vehicles Act, at Section 29, which allows for a party injured by a violation of a provision of the Board of Vehicles Act to bring an action for equitable relief, including injunctive relief, in any court of competent jurisdiction.  63 P.S. §818.29.

61.    As detailed herein, Plaintiff T&S Auto has been injured by violations of Section 12(b)(3) and 16 of the Act due to Defendant Nissan's improper assertion of a right of first refusal and unreasonable withholding of consent for Plaintiff's purchase of the Dealership.

62.   Specific performance of the Asset Purchase Agreement is required since Defendants violated the Board of Vehicles Act, made misrepresentations, acted in bad faith, intentionally interfered with the APA with the purpose and intent of unlawfully preventing Plaintiffs from purchasing the Dealership.

63.   Injunctive relief is also expressly authorized by Article Thirteenth of the Dealer Agreement, which provides that "the Dealership Facilities are unique" and that "monetary damages would be an inadequate remedy" for the failure to perform the terms of the Dealer Agreement, including the purported right of first refusal, in good faith. *See* Exh. 5.

WHEREFORE, Plaintiffs demand that the Court enter judgment directing specific performance of the Asset Purchase Agreement, striking Defendant Nissan's attempted exercise

of the right of first refusal, directing Defendants to sell the Dealership to Plaintiff T&S Auto pursuant to the terms of the APA, and enjoining Defendants from selling or assigning the Dealership to Defendant Bush or to any other individual/entity.

## COUNT II
### FRAUD/NEGLIGENT MISREPRESENTATION
#### (Plaintiffs v. Defendants RJJD and Sipala)

64.   Plaintiffs incorporate by reference the above paragraphs 1 through 63 of Plaintiffs' Complaint as though fully set forth herein at length.

65.   Defendants RJJD and Sipala represented to Plaintiffs that the Standard Provisions constituted the full and complete franchise agreement between Defendant RJJD and Defendant Nissan.

66.   Defendants RJJD and Sipala represented to Plaintiffs that the document attached as Schedule 8(e) to the APA constituted the "Nissan Franchise Sales and Service Agreement".

67.   Defendants RJJD and Sipala also represented to Plaintiffs that the aforesaid Defendants had provided all documents to Plaintiff that were relevant and necessary for Plaintiffs' purchase of the Dealership.

68.   Defendants RJJD and Sipala also intentionally, negligently and/or recklessly omitted and failed to disclose to Plaintiffs the existence of the Dealer Agreement and that the agreement between Defendant RJJD and Defendant Nissan included numerous additional material and undisclosed terms.

69.   Further, Defendants RJJD and Sipala intentionally, negligently and/or recklessly failed to disclose to Plaintiffs that Defendant Nissan had a right of first refusal and that Defendant Nissan intended to exercise that purported right.

70.    Defendants RJJD and Sipala's aforesaid representations were material to Plaintiffs' agreement to purchase the Dealership.

71.    Defendants RJJD and Sipala's representations were false and were made intentionally, negligently or with reckless disregard for the truth.

72.    Plaintiffs reasonably relied upon Defendants RJJD and Sipala's representations by expending thousands of dollars and man-hours compiling information, retaining professionals and otherwise preparing for ownership of the Dealership.

73.    Plaintiff McMenamin also reasonably relied upon Defendants RJJD and Sipala's representations by advising his then-employer, World Auto Group, of his intent to purchase the Dealership.   The expected and foreseeable result was that Plaintiff McMenamin was immediately terminated from his employment with World Auto Group.

74.    Had Defendants RJJD and Sipala disclosed the full terms of their agreement with Defendant Nissan, including Defendant Nissan's purported right of first refusal, Plaintiffs would not have executed the APA, expended substantial time and effort towards the sale and Plaintiff McMenamin would not have been terminated and without employment.

75.    As a direct and proximate result of Defendants RJJD and Sipala's intentional, negligent and/or reckless misrepresentations and omissions, Plaintiffs suffered, and continue to suffer, significant monetary and non-monetary damages, which exceed the sum of $75,000.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants RJJD and Sipala, together with an award of compensatory damages, punitive damages attorney's fees, interest, costs and such other relief as the Court deems appropriate.

## COUNT III
## FRAUD/NEGLIGENT MISREPRESENTATION
### (Plaintiffs v. Defendant Nissan)

76.   Plaintiffs incorporate by reference the above paragraphs 1 through 75 of Plaintiffs' Complaint as though fully set forth herein at length.

77.   At all material times, Defendant Nissan acted through its agents, including, but not limited to Gary Frigo, Vito A. Ruggiero, Dale David, Dennis O'Dwyer and Kevin Wagstaff.

78.   Between July 18, 2014 and September 22, 2014, Defendant Nissan, through its agents, including but not limited to Gary Frigo, repeatedly advised Plaintiffs that the sale of the Dealership to Plaintiff T&S Auto would be fast tracked and would be approved.

79.   Between July 18, 2014 and September 22, 2014, Defendant Nissan, through its agents, made statements and engaged in actions consistent with Nissan's approval of the sale of the Dealership to Plaintiff T&S Auto.

80.   Between July 18, 2014 and September 22, 2014, Defendant Nissan, through its agents, advised Plaintiffs that if they took certain actions, which Plaintiffs immediately acted upon, that the sale of the Dealership to Plaintiffs would be approved.

81.   Perhaps most egregious, Defendant Nissan advised Plaintiff McMenamin that, in order for the sale to go through, Plaintiff McMenamin must inform his then-employer, World Auto Group of the sale.

82.   Defendant Nissan's representations were false and made intentionally, negligently and/or with reckless disregard to the truth.

83.   Defendant Nissan made the aforesaid misrepresentations to Plaintiffs, while at the same time Defendant Nissan intended to sell/assign the Dealership to Defendant Bush.

84. Defendant Nissan made the aforesaid misrepresentations to Plaintiffs at the same time that Defendant Nissan executed agreements with Defendant Bush to sell/assign the Dealership to Defendant Bush.

85. Defendant Nissan made the aforesaid misrepresentations to Plaintiffs although Defendant Nissan always intended to refuse consent of the sale to Plaintiffs and to exercise its purported right of first refusal.

86. Defendant Nissan made the misrepresentations to Plaintiffs while intentionally pursuing its "cluster"/"geographic triangle" scheme to restrict ownership of all of the Nissan dealerships in the Exton-Limerick-Devon area in order to better control and fix motor vehicle prices in the aforesaid area.

87. Plaintiffs reasonably relied upon Defendant Nissan's misrepresentations by expending thousands of dollars and man-hours compiling information, retaining professionals and otherwise preparing for ownership of the Dealership.

88. Plaintiff McMenamin also reasonably relied upon Defendant Nissan's misrepresentations by advising his then-employer, World Auto Group, of his intent to purchase the Dealership.  The expected and foreseeable result was that Plaintiff McMenamin was immediately terminated from his employment with World Auto Group.

89. Had Defendant Nissan disclosed that it intended to withhold consent of the sale of the Dealership to Plaintiffs and instead to sell the Dealership to Defendant Bush, Plaintiffs would not have executed the APA, expended substantial time and effort towards the sale and Plaintiff McMenamin would not have been terminated and without employment.

90.   As a direct and proximate result of Defendant Nissan's intentional, negligent and/or reckless misrepresentations and omissions, Plaintiffs suffered significant monetary and non-monetary damages, which exceed the sum of $75,000.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendant Nissan, together with an award of compensatory damages, punitive damages attorney's fees, interest, costs and such other relief as the Court deems appropriate.

**COUNT IV**
**Violation of Section 16 of the Board of Vehicles Act**
**(Plaintiffs v. Defendant Nissan)**

91.   Plaintiffs incorporate by reference the above paragraphs 1 through 90 of Plaintiffs' Complaint as though fully set forth herein at length.

92.   Section 16 of the Pennsylvania Board of Vehicles Act (63 P.S. §818.16) permits a manufacturer or distributor to enact a right of first refusal to acquire a new vehicle dealer's asserts or ownership in the event of a proposed change of all or substantially all ownership or transfer of all or substantially all dealership assets.  63 P.S. §818.16.

93.   In order to exercise its right of first refusal, the manufacturer and/or distributor must provide timely written notice to the dealer of the exercise of its right of first refusal in accordance with the requirements of Section 12(b)(5) of the Act.

94.   Here, Defendant RJJD submitted and Defendant Nissan received the completed application for approval of the proposed sale of the dealership on July 18, 2014.

95.   Defendant Nissan, thereafter, by letter dated September 22, 2014 attempted to exercise a right of first refusal contained in the purported Dealer Agreement attached hereto as **Exhibit 5**.

96.     Defendant Nissan's attempt to exercise their right of first refusal was legally deficient in that it was not provided to the dealer, Defendant RJJD, and was based upon an alleged first right of refusal contained in an agreement never provided or disclosed to Plaintiffs.

97.     Defendant Nissan's attempt to exercise their purported right of first refusal was untimely, inasmuch as Defendant Nissan unlawfully attempted to extend the time to exercise the right by making bad faith demands for additional information to Plaintiffs, although Defendant Nissan had already decided to sell the Dealership to Defendant Bush.

98.     Pursuant to Section 29 of the Act, Plaintiff T&S Auto, as the prospective purchaser, is entitled to compensatory damages incurred as a result of Defendant Nissan's violation of the Act.

99.     Plaintiff T&S Auto has suffered monetary damages in excess of $75,000 as a consequence of Defendant Nissan's violation of Section 16 of the Act.

100.    Alternatively, if Defendant Nissan's exercise did not violate 63 P.S. §818.16, Plaintiffs are entitled to reasonable expenses, including reasonable attorney's fees incurred in Plaintiffs' attempted purchase of the Dealership.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendant Nissan, together with an award of compensatory damages, attorney's fees, interest, costs and such other relief as the Court deems appropriate.

## COUNT V
### Violation of Section 12(b)(3) of the Board of Vehicles Act
### (Plaintiffs v. Defendant Nissan)

101.    Plaintiffs incorporate by reference the above paragraphs 1 through 100 of Plaintiffs' Complaint as though fully set forth herein at length.

102.   Section 12(b)(3) of the Board of Vehicles Act makes it unlawful for any manufacturer or distributor to unreasonably withhold consent to the sale of a franchise to a qualified buyer capable of being licensed in the Commonwealth of Pennsylvania, who meets the reasonable requirements of the manufacturer or distributor.  63 P.S. §818.12(b)(3).

103.   At all times relevant hereto, Plaintiff T&S Auto was a qualified buyer capable of being licensed as a new Nissan dealer in the Commonwealth of Pennsylvania.

104.   Defendant Nissan's improper, unlawful and untimely attempt to exercise its right of first refusal constitutes an unreasonable withholding of consent to the sale of the Dealership in violation of Section 12(b)(3) of the Act.

105.   Pursuant to Section 29 of the Act, Plaintiff T&S Auto, as the prospective purchaser, is entitled to compensatory damages incurred as a result of Defendant Nissan's violation of Section 12(b)(3) of the Act.

106.   Plaintiff T&S Auto has suffered monetary damages in excess of $75,000 as a consequence of Defendant Nissan's violation of Section 12(b)(3) of the Act.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendant Nissan, together with an award of compensatory damages, attorney's fees, interest, costs and such other relief as the Court deems appropriate.

**COUNT VI**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Plaintiff T&S Auto v. Defendants Nissan and Bush)**

107.   Plaintiffs incorporate by reference the above paragraphs 1 through 106 of Plaintiffs' Complaint as though fully set forth herein at length.

108.   The APA between Plaintiff T&S Auto and Defendant RJJD is a viable and legally enforceable agreement for the sale of substantially all of the assets of the Dealership.

109.   At all relevant times, Defendants Nissan and Bush were aware of the APA and of Defendant RJJD's intention to sell the Dealership to Plaintiff T&S Auto.

110.   Defendant Nissan intentionally and unlawfully interfered with Plaintiff T&S Auto's Asset Purchase Agreement by improperly and unlawfully attempting to exercise a right of first refusal.

111.   Defendant Nissan intentionally and unlawfully interfered with Plaintiff T&S Auto's Asset Purchase Agreement by unreasonably withholding consent of the sale of the Dealership.

112.   Defendants Nissan and Bush intentionally and unlawfully interfered with Plaintiff T&S Auto's Asset Purchase Agreement by entering into clandestine agreements to sell the Dealership to Defendant Bush although Plaintiff's request for consent was pending and/or effectively approved.

113.   Defendant Nissan intentionally and unlawfully interfered with Plaintiff T&S Auto's Asset Purchase Agreement by falsely representing to Plaintiffs that the sale would be approved, although Defendant Nissan intended to sell the Dealership to Defendant Bush.

114.   Defendants Nissan and Bush's acts and omissions were willful, malicious and undertaken with reckless indifference to Plaintiff T&S Auto's rights.

115.   Plaintiff T&S Auto suffered monetary damages in excess of $75,000 as a direct and proximate result of Defendant Nissan and Defendant Bush's intentional and improper interference with the APA.

116.   Defendants' acts and omissions are also sufficiently egregious to warrant the imposition of exemplary and punitive damages.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants Nissan and Bush, together with an award of compensatory damages, punitive damages, attorney's fees, interest, costs and such other relief as the Court deems appropriate.

## COUNT VII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Plaintiffs v. Defendants Nissan and Bush)

117.    Plaintiffs incorporate by reference the above paragraphs 1 through 116 of Plaintiffs' Complaint as though fully set forth herein at length.

118.    Pursuant to the terms of the APA, and upon closing therein, Plaintiff T&S Auto intended to own and operate the Dealership.

119.    Pursuant to the terms of the APA, and upon closing therein, Plaintiff McMenamin intended to be managing member/dealer principal of the Dealership.

120.    It was Plaintiffs' further intent to sell and service Nissan automobiles and related products to the consuming public in the Devon, Pennsylvania area.

121.    As a consequence of Defendants Nissan and Bush's actions, as stated hereinabove, and with willful intent to harm Plaintiffs, Defendants Nissan and Bush tortuously interfered with Plaintiffs' prospective economic gain.

122.    Plaintiffs suffered substantial monetary losses in excess of $75,000 as a direct and proximate result of Defendants Nissan and Bush's acts and omissions.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants Nissan and Bush, together with an award of compensatory damages, attorney's fees, interest, costs and such other relief as the Court deems appropriate.

## COUNT VIII
## CONSPIRACY
### (Plaintiffs v. Defendants Nissan and Bush)

123.   Plaintiffs incorporate by reference the above paragraphs 1 through 122 of Plaintiffs' Complaint as though fully set forth herein at length.

124.   At all material times, Defendants Nissan and Bush conspired and colluded with each other to prevent Plaintiffs from purchasing the Dealership and from realizing the financial benefits of the APA and ownership of the Dealership.

125.   At all material times, Defendants conspired to tortuously interfere with Plaintiff T&S Auto's contractual relationship with Defendant RJJD.

126.   In furtherance of the conspiracy, Defendant Nissan and Bush engaged in secret negotiations for the sale by Defendant Nissan and the purchase by Defendant Bush of the Dealership despite knowledge that Plaintiff T&S Auto had a contract to purchase the Dealership and that Plaintiff had completed all of the requirements for the purchase of the Dealership.

127.   In furtherance of the conspiracy, Defendant Nissan and Bush entered into agreements by which Defendant Nissan sold/assigned/transferred the Dealership to Defendant Bush despite knowledge that Plaintiff T&S Auto had a contract to purchase the Dealership and that Plaintiff had completed all requirements for the purchase of the Dealership.

128.   At all material times, Defendants Nissan and Bush conspired with each other to prevent Plaintiff T&S Auto from purchasing the Dealership.

129.   Defendants acted as aforesaid intentionally and with malice.

130.   As a direct and proximate result of Defendants' conspiracy, Plaintiff T&S Auto has suffered, and will suffer, substantial monetary damages including, but not limited to, the loss of business, lost profit, loss revenue, attorney's fees and costs.

131.   As a direct and proximate result of Defendants' conspiracy, Plaintiff McMenamin has suffered, and will suffer, substantial monetary damages, loss of employment, loss of reputation in the community, loss of business, attorney's fees and costs.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants Nissan and Bush, together with an award of compensatory damages, attorney's fees, interest, costs and such other relief as the Court deems appropriate.

KAPLIN STEWART MELOFF REITER & STEIN, P.C.

Sandhya M. Feltes, Esq.
Maury Reiter, Esq.
Union Meeting Corporate Center
910 Harvest Drive. P.O. Box 3037
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 (fax)
Attorneys for Plaintiffs

## VERIFICATION

The undersigned, subject to the penalties of the Federal Rules of Civil Procedure relating to unsworn falsification to authorities, avers that in this action: I am authorized to make this Verification on behalf of Plaintiff T&S Auto Sales & Service, LLC; and that the information contained in the Complaint is true and correct to the best of my knowledge, information and belief.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

T&S AUTO SALES & SERVICE, LLC

BY: STEVEN KRAMER

## VERIFICATION

I, THOMAS MCMENAMIN, subject to the penalties of the Federal Rules of Civil Procedure relating to unsworn falsification to authorities, aver that that the information contained in the Complaint is true and correct to the best of my knowledge, information and belief.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
THOMAS MCMENAMIN